OPINION
Appellants, Paula and Walter Arrick, appeal a Madison County Court of Common Pleas, Juvenile Division, judgment entry granting permanent custody of Brittani Llyod (DOB 10/11/85), Adam Arrick (DOB 9/27/88), and Danielle Arrick (DOB 1/18/91) to Madison County Department of Children Services ("MCDCS"). We affirm the decision of the trial court.
Paula is the biological mother of Brittani, Adam, and Danielle. Walter is the biological father of Adam and Danielle and is the stepfather of Brittani. After Danielle reported that she had been sexually molested by her parents and their twenty-year-old friend, Danielle Collins ("Collins"), appellants agreed to allow MCDCS to assume temporary custody of the children for a thirty-day period. MCDCS subsequently filed a complaint alleging the dependency of the three children.
At an adjudication hearing, appellants admitted to the dependency of their children but denied that they had sexually abused their children. Paula admitted that she had a romantic relationship with Collins, who resided with appellants. At the adjudication hearing, hospital records and the deposition of Dr. Christina Payne tended to corroborate the allegations made by Danielle, although not conclusively.
MCDCS devised a case plan for appellants, which included visitation with the children. As the case continued, all three children stated that appellants and Collins had sexually abused them. These allegations remained consistent throughout the children's participation in therapy.
The state moved the trial court for permanent custody of the children on July 30, 1999. Based upon the recommendations of the children's counselors, the state of Ohio moved the trial court to suspend visitation on August 18, 1999. In its motion, the state asserted that the visitation was perpetuating the children's sexually-acting-out behavior. The trial court granted the motion to suspend visitation on August 20, 1999.
At the time of the permanent custody hearing, the children had been in the custody of MCDCS for twenty months. After reviewing the evidence, the trial court granted permanent custody of the children to MCDCS. Appellants appeal, raising one assignment of error for our review:
 THE TRIAL COURT ERRED IN FINDING THAT MADISON COUNTY CHILDREN'S SERVICES USED REASONABLE EFFORTS TO REUNIFY THE PARENTS AND CHILDREN.
In their sole assignment of error, appellants contend that MCDCS did not make reasonable efforts to reunify them with their children. Appellants do not argue that the trial court's decision to grant permanent custody is against the manifest weight of the evidence. Therefore, we will limit our review to the consideration of whether MCDCS made a good faith effort to attempt reunification.
This court has previously reviewed the effort required by a county for attempting reunification between dependent children and their parents. "[A] good faith effort to implement a reunification plan means an honest, purposeful effort, free of malice and the design to defraud or to seek unconscionable advantage." In re Weaver (1992), 79 Ohio App.3d 59, 63. In contrast, "[a] lack of good faith effort is defined as importing a dishonest purpose, conscious wrongdoing or breach of a known duty based on some ulterior motive or ill will in the nature of fraud."Id. at 64.
In the case sub judice, MCDCS designed a case plan for appellants to follow. Initially appellants attended one supervised visitation each week. Supervision of these visits was heightened after Paula warned the children not to "tell our secrets." Visitation was increased to two times per week once MCDCS began considering whether the children should be returned to appellants. Also, MCDCS offered an opportunity for a weekly visitation to be held at appellants' home with an in-home therapist. This therapist was supposed to redirect the children and assist the parents in understanding the sexual abuse issues. However, following the advice of their attorney, appellants did not pursue this option.
While in foster care, the children acted out numerous times in ways that were sexually aggressive and inappropriate. When the children lived together in a foster home, they sexually touched each other and masturbated in front of their foster brother. One child began "offending on" other children at school and at church. One child played the game "hide and go seek" as a game of sexual touching, explaining that was how his dad had played the game. When the children thought that they might return to their parents' care, one child exclaimed that she could not wait to go home and suck on her mother's nipple. The foster mother noted that the children's sexually-acting-out behavior increased following visitation with appellants. The behavior increased to the point where the foster parent had to make the difficult decision of letting the children go because she felt that she did not have the knowledge or experience to deal with these bizarre behaviors and feared for the safety of her young son.
Appellants complied with MCDCS's requests that they undergo a psychological assessment and a parenting assessment. Although appellants completed the original case plan, as the case evolved it became increasingly clear that the children had been sexually abused over a significant period of time. Appellants attended educational sessions on sexually abused children. However, because they continued to deny that they had sexually abused their children, they could not participate in a sexual offender treatment program. MCDCS made an attempt to locate Collins to investigate the children's allegations that she had sexually abused them but could not find her.
Appellants assert that MCDCS "believed that they [appellants] were the perpetrators of the abuse and structured the entire case along those lines." However, our review of the case indicates that MCDCS acted in accordance with the children's best interests. Each of the children alleged that they had been sexually abused by their parents, and these allegations remained consistent throughout the case. The children's sexually-acting-out behavior increased after visitation with their parents increased. After the children's acting out behaviors dramatically increased, the children's counselors recommended that visitation be suspended. Only after this recommendation was made did the state move for termination of visitation and file a motion for permanent custody.
There were significant obstacles to reunification. It was apparent that the children had been subject to sexual abuse for a long time while in their parents' care. The trial judge explained in the judgment entry that it is as though "they have been taught this behavior as other children might be taught to brush their teeth or wash their hands." The trial judge quoted Dr. Melissa Layman-Guadalupe, who conducted psychological assessments of appellants and the children and stated, "[t]he therapy needed to set things right again will take a very long time and would have no chance of success in the near future in the home of those that the children assert have abused them and who have either negligently permitted said abuse or perpetrated it themselves."
After reviewing the facts of this case, we conclude that MCDCS's efforts in this case were made in good faith. There is no indication that MCDCS acted with dishonest purpose, conscious wrongdoing, or with an ulterior motive. Instead, MCDCS undertook a good faith effort to seek reunification between the children and appellants. The assignment of error is overruled.
YOUNG, P.J., and WALSH, J., concur.